IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Ronald Jerome Flowers, Jr., ) | C/A No. 0:14-4869-TMC-PJG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Ronald Jerome Flowers, Jr., brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a "severe" impairment;

(3) whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4) whether the claimant can perform his past relevant work; and

(5) whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[1] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 404.1520(h).



**ADMINISTRATIVE PROCEEDINGS**

In January 2012, Flowers applied for DIB, alleging disability beginning September 23, 2009. Flowers's application was denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on September 19, 2013, at which Flowers, who was represented by Beatrice Whitten, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on October 16, 2013 finding that Flowers was not disabled. (Tr. 17-28.)

Flowers was born in 1982 and was twenty-seven years old on September 23, 2009—his alleged disability onset date. (Tr. 27.) He has a high-school education and has past relevant work experience as a painter, a stocker, a bagger, a dishwasher, and a cook. (Tr. 223.) Flowers alleged disability due to above-the-knee left leg amputation and speech problems. (Tr. 222.)

In applying the five-step sequential process, the ALJ found that Flowers had not engaged in substantial gainful activity since September 23, 2009—his alleged onset date. The ALJ also determined that Flowers's left above-the-knee amputation, adjustment disorder, and borderline intellectual functioning were severe impairments. However, the ALJ found that Flowers did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that Flowers retained the residual functional capacity to

> perform sedentary work as defined in 20 CFR 404.1567(a) except no left lower extremity foot controls and avoiding all exposure to workplace hazards. The claimant is further limited to simple routine repetitive tasks with occasional exposure to general public and co-workers.

(Tr. 21.) The ALJ found that Flowers was unable to perform any past relevant work, but that considering Flowers's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Flowers could perform. Therefore, the ALJ found that Flowers was not disabled from September 23, 2009 through the date of her decision.

The Appeals Council denied Flowers's request for review on November 19, 2014, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-4.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.



**ISSUE**

Flowers raises the following issue for this judicial review:

The ALJ's Listing analysis was not based on substantial evidence.

(Pl.'s Br., ECF No. 14.)

**DISCUSSION**

At Step Three of the sequential analysis, the Commissioner must determine whether the claimant meets the criteria of one of the Listings and is therefore presumptively disabled. "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (emphasis added). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also meet the criteria found in the Listing of that impairment. 20 C.F.R. § 404.1525(d). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. 20 C.F.R. § 404.1508. The Commissioner can also determine that the claimant's impairments are medically equivalent to a Listing, which occurs when an impairment is at least equal in severity and duration to the criteria of a Listing. 20 C.F.R. § 404.1526(a). Flowers argues that the ALJ erred in finding that he did not meet Listing 12.05C.

Listing 12.05 provides in pertinent part:

> Intellectual Disability:  Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .



> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work related limitation of function . . . .

20 C.F.R. Pt. 404, Subpart P, App. 1, Listing 12.05.[2]

As set forth above, to meet the diagnostic description or "capsule definition" of intellectual disability, an individual must have "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period [i.e., onset before age 22]." Id.  This has been described by the United States Court of Appeals for the Fourth Circuit as "Prong 1" of Listing 12.05C.  See Hancock v. Astrue, 667 F.3d 470, 473 (4th Cir. 2012). Next, the Listing requires a claimant to satisfy one of four additional requirements, categorized in the Listing as Requirements A-D.  Here, Requirement C is at issue, requiring an IQ score of 60-70, which the Fourth Circuit describes as "Prong 2," as well as a "physical or mental impairment imposing an additional and significant work-related limitation of function," identified as "Prong 3." Id.

No one appears to dispute that Flowers meets the Paragraph C criteria of Listing 12.05, Prongs 2 and 3.  Rather, this appeal centers on the requisite criteria in the introductory paragraph—Prong 1—requiring "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested" before the age of 22. 20 C.F.R. Pt. 404, Subpart P, App. 1, Listing 12.05.  In determining that Flowers did not meet Listing 12.05C because he had not demonstrated deficits in adaptive functioning, the ALJ explained:

---

[2] Effective September 3, 2013, the Social Security Administration replaced the term "Mental Retardation" with "Intellectual Disability" in Listing 12.05.  See Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499-01 (Aug. 1, 2013).  While medical records and case law predating September 3, 2013 utilize the "Mental Retardation" language, the court notes that the substance of the Listing has not changed.

Page 6 of 15



> Although the claimant does have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function, there is no evidence of adaptive deficits given that he had a significant work history including unskilled and semi-skilled positions. While the undersigned accepts the testimony that the claimant was in special education classes[,] he was able to graduate from high school and has adapted well over the years as demonstrated by his ability to obtain a driver's license[], drive, prepare his own meals, manage his own finances, count money and maintain a banking account.

(Tr. 21.)

Flowers argues that the ALJ erred in considering Flowers's work history, citing Luckey v. United States Department of Heath and Human Services, 890 F.2d 666, 669 (4th Cir. 1989), for his argument that the ALJ is precluded from considering a claimant's previous work history in determining whether the section 12.05C criteria are met. (Pl.'s Br., ECF No. 14 at 9-12.) By contrast, the Commissioner relies on the more recent decision of the Fourth Circuit in Hancock, arguing that an ALJ may properly consider such evidence. (Def.'s Br., ECF No. 16 at 7.) Additionally, Flowers argues that the ALJ erred in basing her finding on a list of activities which are not fairly represented in the record. Specifically, Flowers notes that he received a certificate of completion from his high school's special education department, not a regular diploma, and that his mother testified at the administrative hearing that he did not manage his own bank account, and that she wrote rent checks for him. (Tr. 48-50.) In response, the Commissioner asserts that substantial evidence supports the ALJ's conclusion because not only was Flowers able to work various jobs after graduating from high school, he lived independently before his workplace injury, and he admitted that he could drive a car, prepare his own meals, manage his own finances, count money, and maintain a banking account. (Def.'s Br., ECF No. 16 at 7.)

" '[A]daptive functioning' refers to the individual's progress in acquiring mental, academic, social and personal skills as compared with other unimpaired individuals of his/her same age . . . ." Program Operations Manual System ("POMS") § Dl 24515 .056(D)(2). "Adaptive activities" are described as "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." Hawley v. Astrue, No. 1:09CV246, 2012 WL 1268475, at *5 (M.D.N.C. Apr. 16, 2012) (citing Blancas v. Astrue, 690 F.Supp.2d 464, 476 (W.D. Tex. 2010) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.05, 12.00(C)(1))). Deficits in adaptive functioning include limitations in "communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." Jackson v. Astrue, 467 F. App'x 214, 218 (4th Cir. 2012) (citing Atkins v. Virginia, 536 U.S. 304, 308 n.3 (2002)). Case law shows that the issue of whether a claimant manifested deficits in adaptive functioning during the developmental period is a fact-specific inquiry with few bright-line rules. See, e.g., Salmons v. Astrue, No. 5:10CV195-RLV, 2012 WL 1884485, at *5 (W.D.N.C. May 23, 2012) (collecting cases).

Cases interpreting Listing 12.05 provide some parameters for an ALJ's conclusion on this issue. Compare Hancock, 667 F.3d at 475-76 (affirming the Commissioner's determination that the claimant did not have the requisite deficits in adaptive functioning where the claimant had worked as a battery assembler and a drop clipper; performed tasks such as shopping, paying bills, and making change; took care of three small grandchildren at level acceptable to the State Department of Social Services; did a majority of the household chores, attended school to obtain a GED; and did puzzles for entertainment) with Rivers v. Astrue, No. 8:10-cv-314-RMG, 2011 WL 2581447 (D.S.C.

*PJG*

June 28, 2011) (reversing a finding of no deficits in adaptive functioning where the claimant was functionally illiterate, showed poor academic performance with multiple IQ tests in or before the third grade showing scores in the 50s, and dropped out of school in the ninth grade). Cases interpreting Listing 12.05C also provide instruction on the factors that play into this determination. For example, even though IQ range constitutes the Prong 2 determination, the actual score is often considered in conjunction with the level of adaptive functioning. See, e.g., Conyers v. Astrue, No. 4:11-CV-00037-D, 2012 WL 3282329, at *8 (June 29, 2012), adopted in 2012 WL 3283285 (E.D.N.C. Aug. 10, 2012); Holtsclaw v. Astrue, No. 1:10CV199, 2011 WL 6935499, at *4 (W.D.N.C. Dec. 30, 2011) (both discussing IQ score when considering the level of adaptive functioning at the Prong 1 inquiry); see also Norris v. Astrue, No. 7:07-CV-184-FL, 2008 WL 4911794, at *3 (E.D.N.C. Nov. 14, 2008) (noting that a diagnosis of mental retardation is possible with an IQ score of 70-75 when there are significant deficits in adaptive behavior and may not be supported even with an IQ score of below 70 when there are not significant deficits). Moreover, in the absence of any evidence of a change in the claimant's intelligence functioning, the law assumes that the claimant's IQ has remained relatively constant. Luckey, 890 F.2d at 668. Similarly, a claimant's diagnosis, if there is one, is pertinent: when a claimant has been diagnosed as mildly mentally retarded in a Listing 12.05C case, courts are more likely to affirm a finding of deficits in adaptive functioning prior to age 22 than if the claimant has the lesser diagnosis of borderline intellectual functioning. Conyers, 2012 WL 3282329, at *9 (discussing claimant's level of adaptive functioning and noting that the claimant was classified in the low end of the spectrum of mildly

mentally retarded);³ Salmons, 2012 WL 1884485, at *5 (discussing claimant's level of adaptive functioning and noting that the claimant was classified in the borderline intellectual functioning category).

Whether the claimant is illiterate is also an important factor. See Luckey, 890 F.2d at 668-69; Salmons, 2012 WL 1884485, at *7; Holtsclaw, 2011 WL 6935499, at *4; Rivers, 2011 WL 2581447, at *3-4. Similarly, whether the claimant has ever lived independently is a relevant inquiry. Compare Salmons, 2012 WL 1884485, at *4 with Holtsclaw, 2011 WL 6935499, at *5. Another guiding factor is whether the claimant has ever provided care for others, or, conversely, whether he himself is dependent on others for care. Compare Salmons, 2012 WL 1884485, at *7 (noting claimant was heavily dependent on his mother and was not responsible for the care or supervision of anyone else) and Holtsclaw, 2011 WL 6935499, at *4-5 (noting claimant had never lived independently and required a parent's help) with Hancock, 667 F.3d at 475-76 (affirming denial of benefits where the claimant managed the household and cared for her three young grandchildren) and Caldwell v. Astrue, No. 1:09cv233, 2011 WL 4945959, at *3 (W.D.N.C. Oct. 18, 2011) (noting claimant assisted in the care of an elderly parent).

School records and past academic performance are also important indicators of deficits in adaptive functioning prior to age 22. See Salmons, 2012 WL 1884485, at *7 ("[F]unctional academic skills is the primary measure of deficits of adaptive functioning before age 22."); Rivers, 2011 WL 2581447, at *3 (noting that claimant was classified as special needs at school, had repeated evaluations in elementary school with IQ scores all in the 50s, and dropped out of school in the ninth

---

³ Although Conyers was addressing Listing 12.05B, diagnosis can be pertinent even when the issue is whether the Listing 12.05C criteria are met.



grade); see also Conyers, 2012 WL 3282329, at *8-9 (discussing the claimant's school history). Additionally, work history, while it cannot preclude benefits where the Listing 12.05C criteria are otherwise met, Luckey, 890 F.2d at 669, can be relevant in determining whether a claimant manifested deficits in adaptive functioning prior to age 22.  Hancock, 667 F.3d at 475-76 (concluding the ALJ's finding that the claimant did not manifest the requisite deficit in adaptive functioning to be supported by substantial evidence where the ALJ considered, among many other factors, that the claimant had worked several jobs); Harts v. Astrue, 2012 WL 529982, at *6 n.3 (D.S.C. Jan. 30, 2012) (distinguishing Luckey because the ALJ used the claimant's work history as only one factor to support his finding of no significant deficits in adaptive functioning and because the claimant did not otherwise meet the Listing 12.05C criterion of a valid IQ score within the range of 60-70), adopted and incorporated in 2012 WL 529980 (D.S.C. Feb. 17, 2012).  Finally, the tasks a claimant is able to undertake, although not determinative, have been considered in this analysis. See generally Radford v. Astrue, No. 5:08-CV-421-FL, 2009 WL 1675958, at *6 (E.D.N.C. June 10, 2009) (finding that the claimant's ability to perform certain tasks was not inconsistent with mild mental retardation); see, e.g., Hancock, 667 F.3d at 476 n.3 (affirming ALJ's consideration of the claimant's ability to perform tasks such as shopping, paying bills, and making change); Salmons, 2012 WL 1884485, at *7 (discussing claimant's inability to do household chores, cook, and drive).

      Applying these factors to the record presented, the court finds that Flowers has failed to show that the ALJ's conclusion that Flowers did not meet the Prong 1 requirements was unsupported by substantial evidence or controlled by an error of law.  As discussed above, the ALJ considered many of the factors discussed herein in reaching her conclusion.  For example, the decision discusses Flowers's academic history, noting that although Flowers was in special education classes, he



completed high school. (Tr. 21.) Specifically discussing Listing 12.05C, the ALJ considered that Flowers lived independently before his injury, obtained a driver's license, drove, prepared his own meals, managed his own finances, counted money, and maintained a bank account. (Tr. 21, 25.) The ALJ explained that documentary evidence in conjunction with Flower's admissions that he was able to care for his personal hygiene and needs independently, prepare simple meals (using the microwave), manage his own finances, count money and maintain a bank account, watch television, play games on television, drive, go to the movies, go to the park, go shopping, and visit with family and friends, likewise supported the finding that he did not have deficits in adaptive functioning (Tr. 20, 256). See Hancock, 667 F.3d at 476 (upholding a finding of no deficits in adaptive functioning where the claimant demonstrated, among other factors, the ability to shop, handle change, and perform household chores including cooking); Chapman, 2013 WL 3991105, at *11-14 (upholding a finding of no deficits in adapting functioning where the ALJ explained, among other factors, that the claimant demonstrated the ability to maintain grooming and hygiene, performed household chores, and shopped for groceries).

Further, the ALJ also considered that Flowers had a work history at substantial gainful levels, including unskilled and semi-skilled positions. (Id.) The court notes that this district has repeatedly upheld an ALJ's finding that a claimant did not have deficits in adaptive functioning based in part on a past ability to perform semi-skilled or skilled work. See Weedon v. Astrue, No. 11-2971-DCN-PJG, 2013 WL 1315311, at *7 (D.S.C. Jan. 31, 2013), adopted by 2013 WL 1315206 (D.S.C. Mar. 28, 2013); Jenkins v. Astrue, No. 09-1653-JFA-PJG, 2010 WL 3168269, at *5 (D.S.C. Mar. 22, 2010), adopted by 2010 WL 3168268 (D.S.C. Aug.4, 2010). As noted above, work history, while it cannot preclude benefits where the Listing 12.05C criteria are otherwise met, Luckey, 890 F.2d



at 669, can be relevant in determining whether a claimant manifested deficits in adaptive functioning prior to age 22. See Hancock, 667 F.3d at 475–76 (concluding ALJ's finding that the claimant did not manifest requisite deficits in adaptive functioning was by substantial evidence where the ALJ considered, among many other factors, that the claimant had worked semi-skilled jobs).

Moreover, the ALJ observed that Flowers had a history of borderline intellectual functioning. (Tr. 22.) Flowers's October 1995 full scale IQ score was 75, and his May 4, 2010 full scale IQ score was 73—the high end of the range for satisfying the Paragraph C criteria—and his medical diagnosis was borderline intellectual functioning rather than mental retardation. (Tr. 23; see also Tr. 260, 422-23 (evaluation of examining psychologist, Dr. L. Randolph Waid, diagnosing Flowers with borderline intellectual functioning rather12. than mild mental retardation); see also 20 C.F.R. Part 404, Subpart P, App. 1, § 12.00(A) (requiring *documentation of a medically determinable impairment* as well as consideration of the degree of limitation that impairment may impose). Because the ALJ appears to have considered pertinent evidence and weighed appropriate factors in analyzing whether Flowers met Listing 12.05C, the court cannot say that her decision was not supported by substantial evidence or was controlled by error of law. The fact that Flowers can point to other evidence that supports his position does not render the ALJ's decision unsupported. See Hancock, 667 F.3d at 476. "We must sustain the ALJ's decision, even if we disagree with it, provided the determination is supported by substantial evidence . . . ." Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Accordingly, Flowers has not shown that the ALJ's determination that Flowers failed to establish deficits in adaptive functioning as required for Listing 12.05C is unsupported by substantial evidence or controlled by legal error.



## RECOMMENDATION

For the foregoing reasons, the court finds that Flowers has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517.  The court therefore recommends that the Commissioner's decision be affirmed.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

February 19, 2016
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).